UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| STANISLAW STERLINSKI, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 16 C 00596 |
| v. | ) ) ) | Judge Edmond E. Chang |
| THE CATHOLIC BISHOP OF CHICAGO, a Corporation Sole, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Stanislaw Sterlinski brings this suit against the Catholic Bishop of Chicago (in its corporate form), alleging national origin discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, and age discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et. seq.*[1] R. 1, Compl.[2] Specifically, Sterlinski alleges that the Catholic Bishop discriminated against him on the bases of his age and national origin by demoting him from a full-time position to a part-time one. *Id.* He further alleges that the Catholic Bishop then retaliated against him for complaining about this alleged discrimination by

---

[1] The Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331. The defense argument on the "ministerial exception" is an affirmative defense, not an argument for lack of subject matter jurisdiction. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S.Ct. 694, 709 n.4 (2012).

[2] Citations to the record are noted as "R." followed by the docket number and, if necessary, the page or paragraph number. Because the numbering in Sterlinski's complaint is inconsistent—some counts restart at Paragraph 1 (Counts 1, 2 and 5), one starts at Paragraph 5 (Count 3), and one starts at Paragraph 21 (Count 4)—the Court cites to the complaint generally and then, when necessary, includes in parentheses the relevant count and paragraph number.

firing him. *Id.* The Catholic Bishop now moves to dismiss Sterlinski's complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Sterlinski's claims are barred by the "ministerial exception." R. 9, Def.'s Mot. to Dismiss. For the reasons stated below, the Catholic Bishop's motion is granted and the case is dismissed, but without prejudice to give Sterlinski a chance to amend his complaint.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in Sterlinski's complaint.[3] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Sterlinski, who is of Polish descent, was hired by the Catholic Bishop of Chicago in July 1992 as the Director of Music at St. Stanislaus Bishop and Martyr Church. Compl. (Count 1 ¶¶ 9-11)[4]; R. 1-1, Exh. C, Hiring Contract. Sterlinski's duties included: "[s]upervision of, and responsibility for, all music at liturgical celebrations"; "[c]ooperat[ing] with [the] Parish Liturgy Committee … in the selection, preparation, and teaching of music for the congregation"; "[f]urnishing … music and accompaniment at weekend, Holyday, and weekday Masses"; "[p]roviding appropriate music for weddings and funerals"; rehearsing with the parish choir;

---

[3]Sterlinski attaches a declaration to his response brief, which contains additional allegations. R. 18, Pl.'s Resp. Br., Exh. 1, Sterlinski Decl. But when ruling on a Rule 12(b)(6) motion, the Court may generally consider only the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010). There is an exception to this rule, however. Documents attached to a motion to dismiss (or to a plaintiff's response) can become part of the complaint pursuant to Federal Rule of Civil Procedure 10(c) "if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Metz*, 700 F. Supp. 2d at 988. But Sterlinski never referred to this declaration in his complaint. The Court, therefore, declines to consider Sterlinski's attached declaration in deciding this dismissal motion.

[4]Sterlinski repeats many of the same facts under each count in his complaint. For convenience's sake, the Court cites only to one count of the complaint in these instances.

2

"[d]evelop[ing] and participat[ing] in a general music education program for [the parish] and the school"; and maintaining his own skills and professional knowledge. Hiring Contract at 1-2.

From the time he was hired up until his firing, Sterlinski alleges he fulfilled his contract and met the expectations of his employer. Compl. (Count 1 ¶ 19). Yet, in June 2014, Sterlinski was demoted from full-time to part-time, which reduced his salary, schedule, and benefits. *Id.* (Count 1 ¶¶ 12, 14). Sterlinski was 68 years old at the time of his demotion. *Id.* (Count 3 ¶ 9). The Catholic Bishop asserted the demotion was due to a budgetary deficit. *Id.* (Count 1 ¶ 15). But Sterlinski contends it was due to his national origin and age, citing to comments made by the church's pastor, namely, that he (the pastor) was not Polish but rather "Roman," and that Sterlinski was "getting old." *Id.* (Count 1 ¶¶ 12-13; Count 3 ¶ 13). Following his demotion, Sterlinski filed a discrimination charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission against the Catholic Bishop in April 2015, alleging national origin and age discrimination, as well as retaliation. *See id.* (Count 1 ¶ 5; Count 2 ¶ 5; Count 3 ¶ 6; Count 5 ¶ 5); R. 1-1, Exh. A, Discrimination Charge. In December 2015, Sterlinski was fired. Compl. (Count 1 ¶ 17).

This lawsuit followed. Sterlinski alleges the Catholic Bishop discriminated against him on the bases of age and national origin by demoting him for a pretextual reason, namely, budgetary concerns, in violation of Title VII and the ADEA. *Id.* (Count 1 ¶¶ 1-21, Count 3 ¶¶ 5-20). Sterlinski also alleges the Catholic Bishop

3

retaliated against him for complaining of this discrimination by firing him, in violation of Title VII and the ADEA. *Id.* (Count 2 ¶¶ 1-23; Count 5 ¶¶ 1-21). Finally, Sterlinski alleges the Catholic Bishop's violations of the ADEA were intentional and in reckless disregard for his rights. *Id.* (Count 4 ¶¶ 21-22). The Catholic Bishop now moves to dismiss Sterlinski's complaint under Rule 12(b)(6). Def.'s Mot. to Dismiss.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

To be precise, the defense's dismissal motion relies on the "ministerial exception," which is actually an affirmative defense, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S.Ct. 694, 709 n.4 (2012), and thus is neither an argument for lack of subject matter jurisdiction, *id.*, nor, technically speaking, an argument that the complaint fails to state a claim. But neither side contends that the affirmative-defense nature of the ministerial exception makes a difference, and the legal standard ends up being the same in this situation: assuming the facts alleged are true, would the ministerial exception apply?

### III. Analysis

The Catholic Bishop's sole contention in its dismissal motion is that all of Sterlinski's claims are barred by the First Amendment's "ministerial exception," because of the position Sterlinski held in the church. R. 10, Def.'s Br. at 1, 3-4. The "ministerial exception," which is grounded in the First Amendment's Free Exercise and Establishment Clauses, bars employment discrimination suits brought by "ministers" against their religious institutions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S.Ct. 694, 705-06 (2012). The exception is designed to prevent government intrusion into a church's decision of who can act as its ministers. *Id.* at 709 ("The exception … ensures that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical[]' … —is

5

the church's alone." (internal citation omitted)). Although the exception was originally developed in conjunction with Title VII, its application has been extended to claims brought under the ADA and the ADEA as well. *Id.* at 705-07 (applying exception to ADA claim); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1040-43 (7th Cir. 2006) (applying exception to ADEA claim). *See also Hosanna-Tabor*, 132 S.Ct. at 705-06 ("Since the passage of Title VII … and other employment discrimination laws, the Courts of Appeals have uniformly recognized the existence of a "ministerial exception," … [w]e agree that there is such a[n] … exception.").

Whether the exception applies in a given case depends on whether the plaintiff qualifies as "a minister." *Id.* at 709; *see also Collette v. The Archdiocese of Chicago*, 2016 WL 4063167, at *2 (N.D. Ill. July 29, 2016). Of course, the exception applies to individuals formally ordained as ministers, but it is not limited to just those individuals. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003). In determining whether an employee qualifies as a minister, a court's focus is on the *function* of the plaintiff's position, not just job title. *Hosanna-Tabor*, 132 S.Ct. at 707; *Alicea-Hernandez*, 320 F.3d at 703. Because there is no "rigid formula" for determining whether an employee is a minister, *Hosanna-Tabor*, 132 S.Ct. at 707, a court's analysis is "both factual and case-specific." *Collette*, 2016 WL 4063167, at *2. Considerations include: a plaintiff's job duties, and whether they "reflected a role in conveying the [religious institution's] message and carrying out its mission"; "the formal title given [to the plaintiff] by the Church"; "the substance reflected in that title"; whether the plaintiff held herself out as a

6

minister; and whether the plaintiff performed "important religious functions … for the Church." *Hosanna-Tabor*, 132 S.Ct. at 708. Although other case-specific factors can be considered, *see Collette*, 2016 WL 4063167, at *2; *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 177 (5th Cir. 2012), the Supreme Court has cautioned against placing "too much emphasis" on a plaintiff's "performance of secular duties," or on the amount of time a plaintiff's secular duties consumed. *Hosanna-Tabor*, 132 S.Ct. at 708-09.

Here, Sterlinski was employed as the Director of Music. Hiring Contract at 1.[5] He was responsible for—among other things—selecting and supervising "all music at liturgical celebrations," "[f]urnishing suitable music and accompaniment at weekend, Holyday, and weekday Masses," as well as at "weddings and funerals," and also for helping with the "selection, preparation and teaching of music for the congregation." *Id.* Although not a minister in title, those job duties spelled out in the job contract "reflected a role in conveying the Church's message." *Hosanna-Tabor*, 132 S.Ct. at 708. As the Seventh Circuit has pointed out, music is "'an integral part of many different religious traditions,' including the Catholic tradition." *Tomic*, 442 F.3d at 1041 (quoting *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 802–03 (4th Cir. 2000)). It is "a vital means of expressing and celebrating those beliefs which a religious community holds most sacred." *Id.* at 1040-41. By selecting and supervising the music that was to be played at masses and other liturgical celebrations, Sterlinski performed an

---

[5]Sterlinski attached a copy of the hiring contract to his complaint. R. 1, Exh. 1.

7

important role in conveying the Catholic Church's message through the chosen musical expression, which means that he had ministerial duties. *Id.*; *Roman Catholic Diocese*, 213 F.3d at 797 (affirming dismissal of director of music ministry's Title VII claims because her duties "consisted of the selection, presentation, and teaching of music, which is integral to the spiritual and pastoral mission of the Catholic Church"); *Starkman v. Evans*, 198 F.3d 173, 175-76 (5th Cir. 1997) (extending ministerial exception to choirmaster and director of music who "clearly performed tasks that were 'traditionally ecclesiastical or religious'"). *Cf. Collette*, 2016 WL 4063167, at *2-3 (denying defendant's dismissal motion where music director's duties were unclear, and director alleged "he was *not* responsible for … selecting the music played during masses and services," or for "select[ing] []or approv[ing] music for masses" (emphasis added)).

In *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006), the Seventh Circuit faced a similar situation.[6] There, the plaintiff, Richard Tomic, served as the music director and organist of the Catholic diocese in Peoria. *Id.* at 1037. His duties included playing the organ at masses, preparing all music for masses and liturgies, and overseeing the chorus. *Id.* He was fired after getting into

---

[6]It is true that *Tomic* was abrogated by the Supreme Court's decision in *Hosanna-Tabor*, but only on *alternative* grounds—namely, whether the ministerial exception is jurisdictional in nature. The Seventh Circuit concluded that it was, *Tomic*, 442 F.3d at 1038-39, but the Supreme Court disagreed, concluding instead that the exception operated as an affirmative defense, not as a jurisdictional bar, *Hosanna-Tabor*, 132 S.Ct. at 709 n.4. *Hosanna-Tabor* did not undermine the relevant aspects of the Seventh Circuit's decision in *Tomic*. In *Hosanna-Tabor*, the Supreme Court did narrow the focus of the ministerial exception's analysis to the employee's title, training, and role (and other similar factors), but that was already much of what *Tomic* relied on in its analysis. As a result, *Tomic*'s discussion on the religious nature of a music director's duties remains both persuasive and on-point.

a dispute with the bishop's assistant over Easter music, and was replaced with a much younger person. *Id.* at 1037. Tomic sued the diocese for alleged age-discrimination. *Id.* After the district court dismissed the case based on the ministerial exception, Tomic appealed. *Id.* The Seventh Circuit affirmed the dismissal, explaining that among the plaintiff's duties "was that of selecting music to be played at various masses." *Id.* at 1040. This duty, the Seventh Circuit explained, was a religious one, "requir[ing] [the plaintiff] to make a discretionary religious judgment because the Catholic Church does not have rules specifying what piece of music is to be played at each type of mass." *Id.* The Seventh Circuit then went on to explain, as discussed above, the importance of music in the Catholic Church. *Id.* at 1040-41. The Seventh Circuit also used Tomic's case, and in particular, the reason for his firing, as an example for why the ministerial exception is still needed in employment discrimination cases. (As discussed later in the Opinion, however, the Supreme Court has taken a broader view of the exception's purpose.) The Seventh Circuit explained that if Tomic's case were allowed to proceed, then the court would invariably be propelled "into a controversy, quintessentially religious, over what is suitable music for Easter services." *Id.* at 1040. This, the Seventh Circuit stated, would require the court "to resolve a theological dispute," exactly what the exception is designed to prevent. *Id.* Based on these facts, the Seventh Circuit held that Tomic, as music director, fell under the ministerial exception.

Sterlinski's duties as Director of Music mirror Tomic's duties; both men were charged with selecting suitable music, furnishing the music at mass, and rehearsing with the choir. *Id*. at 1037; Hiring Contract at 1-2. Because Sterlinski was employed by the Catholic Church like Tomic was, and similarly responsible for selecting the music to be played at mass, he too was required to regularly make "discretionary religious judgment[s]." *Tomic*, 442 F.3d at 1040. These judgment-calls made by Sterlinski about what music to play and how to play it made him an integral part of the Church, and put him in a role that affected the religious experience of all the Church's parishioners. Thus, like Tomic, Sterlinski's duties placed him within the confines of the ministerial exception.

Sterlinski offers several arguments for why he should not be subject to the ministerial exception, but none are persuasive. First, Sterlinski argues that unlike the plaintiff in *Tomic*, he was fired for financial reasons, not due to any theological dispute. R. 18, Pl.'s Resp. Br. at 3. Citing to *DeMarco v. Holy Cross High School*, 4 F.3d 166 (2d Cir. 1993), Sterlinski asserts that given the alleged reason for his termination, the Court would not have to "put into issue the validity or truthfulness of Catholic religious teaching." Pl.'s Resp. Br. at 3 (citing *DeMarco*, 4 F.3d at 172). But even assuming that to be true, an employer's alleged reason for the adverse employment action plays no role in the exception's applicability. To be sure, the alleged reasons for the employment action are mentioned in both *DeMarco* and *Tomic*, but both of those cases were decided before the Supreme Court issued its decision in *Hosanna-Tabor* in 2012. There, the Supreme Court made clear that the

purpose of the ministerial exception "is *not* to safeguard a church's decision to fire a minister *only* when it is made for a religious reason," as Sterlinski now suggests, but rather to "ensure[] that the authority to select and control who will minister to the faithful … is the church's alone." 132 S.Ct. at 709 (emphases added). The upshot of this description of the exception is that a religious institution's reason for firing one of its employees is not a factor that weighs into the exception's analysis.

The Seventh Circuit's discussion in *Tomic* is not really contrary to this. To be sure, the Seventh Circuit did discuss the reason for the plaintiff's firing in *Tomic*—namely, disagreement over Easter music—but it did so to give a stark example of why the ministerial exception was particularly applicable in Tomic's situation, *not* to create an independent, threshold requirement for the applicability of the ministerial exception. Also, *Tomic* mentioned the employer's reason for the firing in order to distinguish the plaintiff's case from *DeMarco*, in which the Second Circuit took into account the alleged reason for the employment action and the likelihood that a theological dispute would arise if the case were to proceed. *Tomic*, 442 F.3d at 1040-41; *DeMarco*, 4 F.3d at 172. What's more, given prior Seventh Circuit precedent, it is unlikely that the Seventh Circuit intended to require that the employer's alleged reason be theologically based in order to invoke the ministerial exception. Even before its decision in *Tomic*, the Seventh Circuit had already made clear that, in applying the ministerial exception, "[i]t is … not [the court's] role to determine whether the Church had a secular or religious reason for the alleged mistreatment of [the plaintiff]. The only question is that of the appropriate

11

characterization of [the plaintiff's] position." *Alicea-Hernandez*, 320 F.3d at 703. This aligns with the principles set out by the Supreme Court in *Hosanna-Tabor*, which similarly instructs that a court's analysis should be focused only on whether the plaintiff functioned as a minister. Accordingly, the fact that the defense's alleged reason for the firing is purely secular does not alter whether the ministerial exception applies.

Next, Sterlinski argues that although his job title was Director of Music, he was not truly a minister because he did not have independent authority over the music selected; he could only recommend music for liturgies. Pl.'s Resp. Br. at 4. Sterlinski states that liturgical selections were often dictated by the pastor, the Archdiocese, or the Church. *Id.* But a similar argument was advanced in *Tomic* and rejected. In *Tomic*, the Seventh Circuit explained that the duty to select and play appropriate liturgical music is a traditionally religious role. 422 F.3d at 1040-41. And although the plaintiff's music choices in *Tomic* could be overridden by the bishop or rector—similar to how Sterlinski's selections could be overridden here— the Seventh Circuit held that this did not change the fact that the plaintiff held a position with a ministerial duty. *Id.* at 1041. The same can be said of Sterlinski. His role as Director of Music still directly impacted the religious experience of all parishioners, and even if Sterlinski did not have absolute authority over what music to select, he was still tasked with contributing to the music selection process and with deciding how the music was to be played and expressed during liturgical celebrations. So, although Sterlinski did not have complete autonomy in his choice

of music, he still acted in a ministerial capacity and falls under the ministerial exception.

Finally, Sterlinski argues that at the time he was fired, he had been demoted from his position of Director of Music. Pl.'s Resp. Br. at 3. He claims that his "duties were altered considerably in the last year of his employment: so much so that, even if he had been covered by the ministerial exception prior to his demotion … , he was … no longer covered by [the] exception after [his] demotion." *Id.* But outside of alleging that his demotion resulted in a reduced salary, schedule, and benefits, Compl. (Count 1 ¶ 14), the complaint actually does not allege how this demotion impacted his actual job duties, if it did at all. In somewhat of a contradiction, the complaint also alleges that Sterlinski was still employed as Director of Music at the time of his firing, *id.* (Count 1 ¶ 11), which suggests that Sterlinski was still tasked with performing the duties outlined in his contract. Having said that, the Court will give Sterlinksi a chance to amend the complaint; leave should be freely given at this early stage. Indeed, depending on what Sterlinksi alleges in the amended complaint, it might be more appropriate to address the ministerial exception after limited discovery and an early summary judgment motion, rather than another dismissal motion invoking what is really an affirmative defense. (When Sterlinski attached the hiring contract to his complaint, he made it a lot easier for the defense to file the dismissal motion before discovery.) Of course, if Sterlinksi cannot in good faith make allegations to fix the problems discussed in the Opinion, then the

dismissal will convert into a dismissal with prejudice. The amended complaint is due by September 7, 2016.

## IV. Conclusion

For the reasons stated above, Sterlinski's complaint is dismissed without prejudice. If Sterlinski wishes to amend his complaint, then he must file the amended complaint by September 7, 2016. If no amended complaint is filed by that date, then Sterlinski's case will be dismissed with prejudice and judgment will be entered. The status hearing of August 30, 2016, is reset to September 15, 2016, at 9 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 23, 2016