UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| STANISLAW STERLINSKI, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 16 C 00596 |
| v. | ) ) ) | Judge Edmond E. Chang |
| THE CATHOLIC BISHOP OF CHICAGO, a Corporation Sole, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stanislaw Sterlinski filed this suit against the Catholic Bishop of Chicago, alleging national origin discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, as well as age discrimination and retaliation, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*[1] R. 1, Compl.[2] In particular, Sterlinski claimed that the Catholic Bishop had demoted him because of his national origin and age, and then fired him when he complained of the demotion. *Id.* (Count 1 ¶ 12; Count 2 ¶ 14; Count 3 ¶ 12; Count 5 ¶ 18). In August 2016, the Court dismissed Sterlinski's complaint without prejudice

---

[1] This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. The "ministerial exception" to Title VII is actually an affirmative defense, rather than an exception to subject matter jurisdiction. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012).

[2] Citations to the record are noted as "R." followed by the docket number and, if necessary, the page or paragraph number. Because the numbering in Sterlinski's original and amended complaints is inconsistent—some counts restart at Paragraph 1 (Counts 1, 2 and 5), one starts at Paragraph 5 (Count 3), and one starts at Paragraph 21 (Count 4)—the Court cites to the complaints generally and then, when necessary, includes in parentheses the relevant count and paragraph number.

on the ground that Sterlinski's claims are barred by the First Amendment's "ministerial exception." R. 23, 8/23/16 Opinion at 2.

Sterlinski has since filed an amended complaint, asserting all of the same claims, but this time alleging how the demotion affected his job duties as the church's Director of Music. R. 24, Am. Compl. (Count 1 ¶ 13).[3] This is the only substantive difference between the original and amended complaints. The Catholic Bishop now moves to dismiss Sterlinski's amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the ministerial exception still bars Sterlinski's claims. R. 26, Mot. to Dismiss Am. Compl. For the reasons stated below, the Catholic Bishop's motion is granted in part and denied in part, and limited discovery is directed on the issue of whether Sterlinski was a "minister"—within the meaning of the ministerial exception—at the time of his firing.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in Sterlinski's amended complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Sterlinski was hired by the Catholic Bishop in July 1992 to serve as the Director of Music at St. Stanislaus Bishop and Martyr Parish. Am. Compl. (Count 1 ¶¶ 9, 11-12). Sterlinski's duties as Director of Music included: selecting liturgical music, teaching music to the children at Polish School, participating in the budget process, attending Archdiocesan Music Committee activities, and holding practices for the

---

[3]As with the original complaint, many of the facts under each count in the amended complaint are repeats. The Court cites to only one count of the amended complaint in these instances.

2

church choirs.⁴ *See id*. (Count 1 ¶ 13). Sterlinski was also required to maintain his own music skills. *Id*.

In June 2014, Sterlinski was demoted from a full-time position to a part-time position without benefits. Am. Compl. (Count 1 ¶¶ 12, 14). Sterlinski, who is of Polish descent, was 68 years old at the time. *Id*. (Count 1 ¶ 10; Count 3 ¶ 9). As a result of the demotion, all of Sterlinski's duties as Director of Music were taken away, and he became a "mere[] ... organist" at church functions. *Id*. (Count 1 ¶ 13 (internal quotation marks omitted)).

The Catholic Bishop claims that Sterlinski was demoted because of a budgetary deficit. Am. Compl. (Count 1 ¶ 15). Sterlinski, however, alleges that this explanation is pretextual because the church's financial records suggest that it had a profit of $82,000 as of November 1, 2014, which was $20,000 more than in 2013. *Id*. (Count 1 ¶ 16). Sterlinski contends that he was actually demoted because of his national origin and age. *Id*. (Count 1 ¶ 12; Count 3 ¶ 12). He bases this on the fact that the pastor that demoted him had made comments about Sterlinski (1) not being "Roman" and (2) "getting old." *Id*. (Count 1 ¶ 17; Count 3 ¶ 17 (internal quotation marks omitted)).

Sterlinski complained to the Catholic Bishop about his national-origin and age-based demotion, Am. Compl. (Count 2 ¶ 20; Count 5 ¶ 18), and—in December

---

⁴Sterlinski attached a copy of his employment agreement to his original complaint, but not to his amended complaint. *See* R. 1-1, Exh. C, Employment Agreement; Am. Compl. The amended complaint supersedes the original complaint, *see Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008)—and, as a general matter, the Court may not consider documents that have not been attached to a complaint when deciding a motion to dismiss, *see* Fed. R. Civ. P. 12(d)—so the Court has not relied on the employment agreement in considering the Catholic Bishop's motion.

3

2014—he was fired, *id.* (Count 1 ¶ 18). Sterlinski then filed a discrimination charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission against the Catholic Bishop, alleging national origin and age discrimination, as well as retaliatory discharge.[5] R. 24-1, Exh. A, Discrimination Charge. The EEOC issued a right to sue letter, *see* R. 24-1, Exh. B, Right to Sue Letter, and Sterlinski brought this lawsuit.

In his original complaint, Sterlinski claimed that the Catholic Bishop had discriminated against him—by demoting and terminating him—because of his age and national origin, in violation of Title VII and the ADEA. Compl. (Count 1 ¶¶ 12-19; Count 5 ¶¶ 12-19). Sterlinski also claimed that the Catholic Bishop had retaliated against him—by firing him—for complaining about his discriminatory demotion, in violation of Title VII and the ADEA. *Id.* (Count 2 ¶¶ 9-21; Count 5 ¶¶ 8-19). Finally, Sterlinski claimed that the Catholic Bishop's violations of the ADEA were intentional and in reckless disregard of his rights. *Id.* (Count 4 ¶ 22). The Catholic Bishop moved to dismiss Sterlinski's complaint under Rule 12(b)(6) on the ground that his claims were barred by the First Amendment's ministerial exception. R. 9, Mot. to Dismiss Original Compl. The Court granted the motion to dismiss, but without prejudice to give Sterlinski a chance to amend his complaint. 8/23/16 Opinion at 2.

---

[5]The prior Opinion incorrectly said that Sterlinski filed his discrimination charge after his demotion and before he was fired. 8/23/16 Opinion at 3. In actuality, the charge was filed in April 2015, several months after Sterlinski had been fired. *See* R. 24-1, Exh. A, Discrimination Charge. The timing of the filing was not important to the previous Opinion.

4

Sterlinski has since filed a new complaint, asserting the same causes of action, but this time alleging how his job duties changed after he was demoted. *See* Am. Compl. The Catholic Bishop now moves to dismiss Sterlinski's amended complaint under Rule 12(b)(6), arguing that his claims are still barred by the ministerial exception. *See* Mot. to Dismiss Am. Compl.; R. 28, Def.'s Br.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

5

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

As explained in the prior Opinion, the ministerial exception is actually an affirmative defense, *see Hosanna Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012), and is neither an exception to subject matter jurisdiction nor even a failure to state a claim. 8/23/16 Opinion at 5. Sterlinski, however, has not objected to the Catholic Bishop's use of Rule 12(b)(6) and the applicable legal standard is basically the same: the Court must decide whether, assuming the facts alleged in the complaint are true, the affirmative defense has been established, *see United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

### III. Analysis

The ministerial exception bars claims of employment discrimination advanced by "ministers" against their religious-institution employers. *Hosanna-Tabor*, 565 U.S. at 188, 190 (applying ministerial exception to Title VII claim); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1041 (7th Cir. 2006) (applying ministerial exception to ADEA claim). The purpose of the exception is to ensure "that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone." *Hosanna-Tabor*, 565 U.S. at 194-95 (internal quotation marks and citation omitted).

The applicability of the exception depends on whether the plaintiff-employee was a "minister." *Hosanna-Tabor*, 565 U.S. at 190; *see Alicea-Hernandez v. Catholic*

6

*Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003). For the purposes of the ministerial exception, a "minister" can be someone other than "the head of a religious congregation." *Hosanna-Tabor*, 565 U.S. at 190. In fact, there is no "rigid formula for deciding when an employee qualifies as a minister." *Id.* Rather, to determine whether a plaintiff qualifies as a minister, courts must engage in "factual and case-specific" analysis, *Collette v. Archdiocese of Chi.*, 200 F. Supp. 3d 730, 733 (N.D. Ill. 2016), considering things like the plaintiff's job duties, and whether they "reflected a role in conveying the Church's message and carrying out its mission"; "the formal title given [to the plaintiff] by the Church"; "the substance reflected in that title"; whether the plaintiff held himself out as a minister; and whether the plaintiff performed "important religious functions … for the Church," *Hosanna-Tabor*, 565 U.S. at 192.

The Catholic Bishop contends that Sterlinski's claims are barred by the ministerial exception because his work for the church, both before and after his demotion, was ministerial. Def.'s Br. at 1, 3. Setting aside for the moment Sterlinski's role at the time of his firing, the Court agrees that Sterlinski was a minister, within the scope of the ministerial exception, at the time of his *demotion*. He was employed by the church as its Director of Music. Am. Compl. (Count 1 ¶ 11). And, until he was demoted, he was responsible for selecting the liturgical music, teaching music to children at Polish School, holding practice for the church choirs, participating in the church's budget process, and attending Archdiocesan Music Committee activities. *Id.* (Count 1 ¶ 13). In *Tomic v. Catholic Diocese of Peoria*, 442

7

F.3d 1036 (7th Cir. 2006), the Seventh Circuit applied the ministerial exception under nearly identical circumstances.[6] *See id.* at 1041 (holding that the ministerial exception applied to bar plaintiff's discrimination suit where plaintiff had been the director of music and where plaintiff's duties had included playing the organ at religious events; preparing and selecting music for all masses and liturgies; and recruiting, training, directing, and holding rehearsals for the members of the chorus); *cf. Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012). *Tomic* is binding on this Court, so Sterlinski's claims of discriminatory demotion cannot stand. What remains are Sterlinski's discrimination and retaliation claims based on his *termination*.

Sterlinski alleges that, when he was demoted, his Director of Music duties were taken away from him such that—up until the time of his termination—he was "merely ... an organist" at church functions. Am. Compl. (Count 1 ¶ 13 (internal quotation marks omitted)). According to Sterlinski, this dramatic change in duties rendered his previously ministerial role non-ministerial. *See* R. 30, Pl.'s Br. at 2-3. The Catholic Bishop, however, argues that even a church organist performs ministerial functions within the ambit of the ministerial exception. Def.'s Br. at 4. It bases this argument principally on a brief discussion of organ playing in *Tomic*. *Id.*

In *Tomic*, the plaintiff argued that the ministerial exception should not bar his employment discrimination claim because, in his role as church organist, "all [he] did was play music." 442 F.3d at 1040. The Seventh Circuit was not persuaded:

---

[6]As the Court noted in its previous Opinion, *Tomic* was abrogated by the Supreme Court's decision in *Hosanna-Tabor*, but only on alternative grounds—namely, whether the ministerial exception is jurisdictional in nature. *See* 8/23/16 Opinion at 8 n.6.

8

> [T]here is no one way to play music. If [the plaintiff] played the organ with a rock and roll beat, or played excerpts from *Jesus Christ Superstar,* at an Easter Mass he would be altering the religious experience of the parishioners.

*Id*. But this commentary on the functions of an organist was not necessary to *Tomic*'s holding. The plaintiff in *Tomic* was not a "mere" organist; he was also employed as a Director of Music, with duties that included selecting music for religious services and managing the church's chorus. *Id*. at 1037-40. The Seventh Circuit relied on these duties—especially the duty to choose music for religious services—when it held that plaintiff's role was ministerial. *Id*. at 1040-41. In fact, no court has deemed a "mere" musician to be performing ministerial duties for purposes of the ministerial exception. The Catholic Bishop cites *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012), in support of its "mere organist" argument, but in *Cannata*—as in *Tomic*—the plaintiff had duties beyond just playing an instrument. *See Cannata*, 700 F.3d at 177-78 (plaintiff claimed he "merely played the piano at Mass," but he also oversaw the music program, fostered the active participation of the "liturgical assembly," and selected music for Sunday mass).

What's more, nothing in the amended complaint alleges that Sterlinski had the sort of discretion that the Seventh Circuit alluded to when commenting on why an organist might still be considered a minister for purposes of the ministerial exception. Perhaps discovery will reveal that Sterlinski really did nothing more than play music exactly as written, and played no role in selecting pieces or exercising any discretion in how the music was played. Regardless, it would not be

9

appropriate for the Court to draw inferences against Sterlinski at this stage of the litigation. This is especially true because the Catholic Bishop is asserting an affirmative defense. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" because "these defenses typically turn on facts not before the court at that stage in the proceedings."); *see also Cannata*, 700 F.3d at 172 n.3 ("Given the nature of the ministerial exception, we suspect that only in the rarest of circumstances would dismissal under Rule 12(b)(6)—in other words, based solely on the pleadings—be warranted.").

So discovery must move forward, but only on a limited basis. Before launching into potentially intrusive merits discovery about the firing—the very type of intrusion that the ministerial exception seeks to avoid—it is sensible to limit discovery to the applicability of the ministerial exception.[7] The discovery will no doubt include figuring out what Sterlinski's duties were at the time of his firing. In addition to fact discovery about Sterlinski's duties, one or both sides might also want to engage in discovery on whether a musician who solely plays music chosen by others *still* ought to be considered as someone who performs a ministerial function. It is possible, for example, that the Catholic Bishop could offer evidence proving that there really is no such thing as robotically performing music such that there is no religious aspect to the musician's performance. For his part, Sterlinski might try to rebut that evidence with his own expertise, or offer evidence from an

---

[7]Sterlinski's counsel may confer with defense counsel to ensure that a litigation hold on documents is in place, so that there is proper document retention if the case eventually moves forward on the merits.

10

expert. Either way, the Court encourages the parties to think about what is necessary to litigate the ministerial exception fully, so that there need not be a second round of discovery on it later.

## IV. Conclusion

For the reasons discussed, the Catholic Bishop's motion to dismiss is granted in part and denied in part. Sterlinski's demotion claims are barred by the ministerial exception and are dismissed with prejudice. Sterlinski's claims concerning his firing, however, remain intact for now. The Court orders limited discovery to determine whether Sterlinski was performing, at the time of his firing, ministerial duties within the ambit of the ministerial exception. The May 11, 2017 status hearing remains as scheduled, though the time is reset to 9:15 a.m.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 1, 2017